UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Plaintiff,

v.

NADA ABOUELNAGA and KONSTANTIN GINZBURG,

Defendants.

Case No. 25-CV-0006 (PJS/DJF)

ORDER

---

Robert E. Kuderer, ERICKSON, ZIERKE, KUDERER & MADSEN, P.A., for plaintiff.

Steven Russell Coon, LAW OFFICES OF STEVEN COON, for defendant Nada Abouelnaga.

Konstantin Ginzburg, pro se.

This matter is before the Court on the summary-judgment motion of plaintiff State Farm Mutual Automobile Insurance Company ("State Farm"). The only issue is whether defendant Nada Abouelnaga was covered by a State Farm policy on June 26, 2024, when she was involved in an automobile accident that killed Shleyma Ginzburg.[1] State Farm argues that Abouelnaga was uncovered because her insurance policy ("the

[1]State Farm named Konstantin Ginzburg, the representative of the estate of Shleyma Ginzburg, as a defendant in this action. *See* ECF No. 1 ¶ 6. Ginzburg did not oppose State Farm's summary-judgment motion or appear at the hearing.

Policy") had been canceled prior to June 26, 2024, due to non-payment of premiums after State Farm gave her legally sufficient notice. The Court agrees.

## I. BACKGROUND

On June 26, 2024, Abouelnaga struck a bicyclist, Shleyma Ginzburg, while driving her 2021 Honda. ECF No. 28-1. Ginzburg died as a result of his injuries. ECF No. 1 ¶ 2.

Abouelnaga had been insuring her Honda through State Farm. ECF No. 28-4. To pay her premiums, Abouelnaga had set up recurring credit-card payments. *Id.* From January to May of 2024, State Farm charged $241.63 per month to Abouelnaga's credit card. *Id.* On June 3, State Farm charged $245.23 (Abouelnaga's premium had apparently increased slightly), but on June 4, Abouelnaga's bank reversed the payment. *Id.* On June 5, State Farm sent a cancellation notice to Abouelnaga via U.S. mail. ECF No. 28-2. Abouelnaga received the notice on June 10. ECF No. 28-5.

The top of State Farm's cancellation notice stated that "[o]ne or more of your payments has been late. Please pay this notice timely to avoid a lapse in coverage." ECF No. 28-2. The notice listed June 20 as the due date and warned that "THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE." *Id.* The notice identified $245.23 as the "amount due" and noted that "[t]he amount due includes the amount of a returned payment." *Id.*

The middle of the notice contained two parts. The first was the "Policy Cancellation Information," which described Minnesota law regarding the cancellation of auto and homeowner's policies. *Id.* The second was a list of the two policies then held by Abouelnaga: one for her car, and one for her home. *Id.* For her auto policy, the notice reported a "cancel date" of June 20, 2024 and a "balance due" of $1,384.75. *Id.*[2] For her homeowner's policy, the notice reported a "cancel date" of July 12, 2024, and a "balance due" of $171.31. *Id.*

Finally, the bottom part of the notice (labeled "accountholder copy") consisted of a detachable payment coupon. *Id.* The coupon again identified a due date of June 20 and an "amount due" of $245.23. *Id.* The coupon instructed Abouelnaga to "return this part with [a] check made payable to State Farm" and further advised that "[p]ayment required to continue your insurance has not been received. Please pay the full amount due. THIS IS THE ONLY CANCELLATION NOTICE YOU WILL RECEIVE." *Id.*

---

[2]The record is not entirely clear, but the Court (and Abouelnaga's counsel) assume that Abouelnaga's auto policy was for a term of one year. *See* ECF No. 28-4. Abouelnaga's payment history shows monthly payments of $241.63 in January, February, March, April, and May of 2024, totaling $1,208.15. *Id.* This is reasonably consistent with the conclusion that the "balance due"of $1,384.75 reflects the overall amount that she owed on a one-year policy, minus the five payments she had already made. *See also* Pl.'s Reply, ECF No. 32 at 3 n.2 ("The total '*balance* due' was simply the total amount Abouelnaga owed once the recurring monthly payment feature was suspended to the failure of [d]efendant to pay her premium.").

Abouelnaga did not make a payment before June 20, 2024, so the Policy was cancelled on that date. ECF Nos. 28-3, 28-4. Six days later, Abouelnaga was involved in the accident. ECF No. 28-1. Two days after the accident (i.e., June 28), Abouelnaga paid the amount due to State Farm ($245.23), and State Farm reinstated her policy. ECF No. 28-3. The reinstatement notice sent by State Farm to Abouelnaga confirmed that the Policy was not in effect between the cancellation date (June 20) and the reinstatement date (June 28). *Id.*

## II. ANALYSIS

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When ruling on a summary-judgment motion, the Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor. *Wobig v. Safeco Ins. Co. of Ill.*, 40 F.4th 843, 847 (8th Cir. 2022).

Minnesota substantive law governs this diversity action. *See, e.g.*, *Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 678 (8th Cir. 2008). Under Minnesota law, an insurer

may cancel an automobile-insurance policy for nonpayment of premiums. Minn. Stat. § 65B.15, subd. 1. For such a cancellation to be effective, though, the insurer must provide ten-days' notice to the insured and specify the reason for cancellation. Minn. Stat. § 65B.16. The Minnesota Supreme Court has held that such notice is invalid if it is "ambiguous or evasive." *Cormican v. Anchor Cas. Co.*, 81 N.W.2d 782, 788 (Minn. 1957). To effectively cancel a policy for nonpayment of premiums, a notice must be "explicit, unconditional, and unequivocal," and "make clear that coverage will cease without further notice." *Dairyland Ins. Co. v. Neuman*, 338 N.W.2d 37, 41 (Minn. 1983) (quoting *Cormican*, 81 N.W.2d at 788); *see also Cormican*, 81 N.W.2d at 799 (stating that a notice must announce "an actual and unqualified cancellation as of a definite time if the premium is then unpaid").

The only question in this case is whether the cancellation notice that State Farm sent to Abouelnaga was sufficiently clear. The clarity of that notice is "tested by the meaning it would reasonably convey to one who receives it." *Lievers v. Nat'l Ins. Underwriters*, 101 N.W.2d 817, 819 (Minn. 1960). Abouelnaga argues that the inclusion of both an "amount due" ($245.23) and a "balance due" ($1,384.75) rendered the notice ambiguous. The Court disagrees.

As an initial matter, the cancellation notice was crystal clear that, if Abouelnaga did not pay *some amount of money* to State Farm by June 20, 2024, her policy would be

cancelled. Abouelnaga does not argue otherwise. And it is undisputed that Abouelnaga did not pay *anything* to State Farm—or even reach out to State Farm—prior to June 20. Thus, on the day of the accident (June 26, 2024), there could have been no doubt in Abouelnaga's mind that her automobile policy had been cancelled six days earlier.

The cancellation notice was also clear about the *amount* that was due from Abouelnaga. Coupons like the one appearing at the bottom of the cancellation notice are ubiquitous. They routinely appear at the bottom (or at the top) of bills sent by utilities, banks and other lenders, credit-card companies, health-care providers, internet-service providers, cell-phone companies, day-care operators, private schools, trash-removal companies, newspapers, magazines, and many, many others. A consumer who receives a bill with an attached coupon tears off the coupon, looks at the "amount due" on the coupon, and pays that amount. In this case, the detachable coupon at the bottom of the State Farm cancellation notice identifies $245.23 as the "amount due" and clearly instructs Abouelnaga to remit payment *for* that "amount due" along with the coupon.

A reasonable person would have understood that she had to return the coupon with payment in the amount shown as "due" on the coupon. It would make no sense to return a coupon showing an "amount due" of $245.23 with a payment of $1,384.75. The

cancellation notice was "explicit, unconditional, and unequivocal" in communicating that, in order to avoid a lapse in coverage, Abouelnaga had to pay $245.23 by June 20. *Dairyland*, 338 N.W.2d at 41.

The top of the notice was similarly clear. It included the same information but also explained that "[t]he amount due includes the amount of a returned payment." Not only that, the top of the notice warned that a "late payment" had to be rectified in order to "avoid a lapse in coverage." These references, read in context, cannot reasonably be understood to demand payment of the $1,384.75 "balance due." *Cf. St. Paul Fire & Marine Ins. Co. v. Bierwerth*, 175 N.W.2d 136, 142 (Minn. 1969) ("The ultimate determination of whether the insurance was in effect depends upon all the facts, including the prior course of conduct between the insured and the insurer . . . .").

Month after month, Abouelnaga had been paying $241.63 to State Farm. Her June premium increased only slightly to $245.23. The payment that was "returned" by Abouelnaga's credit-card company was $245.23. A reasonable recipient could not possibly conclude, under these circumstances, that she needed to pay $1,384.75 to avoid a gap in coverage. *See Cormican*, 81 N.W.2d at 799 (describing that a notice must state a definite date on which the policy will be cancelled if "the *premium* is then unpaid" (emphasis added)).

Nevertheless, according to Abouelnaga, the inclusion of the "balance due" in the middle portion of the notice rendered the notice ambiguous and invalid. The Court finds that, while it is conceivable that *someone* could have mistaken the balance due for the amount due, no *reasonable* recipient of the notice could have done so. The $1,384.74 "balance due" was unmistakably separate and distinct from the two references to the $245.23 "amount due." Importantly, immediately below the notice's identification of the "balance due" on Abouelnaga's *auto* insurance appeared an identification of the "balance due" on Abouelnaga's *homeowner's* insurance. Nothing in the cancellation notice so much as hinted that the *homeowner's* insurance would be cancelled unless Abouelnaga made a payment. Obviously, then, "amount due"—which appeared on both the top of the notice *and* the coupon—was different from "balance due."

Further still, while the top of the notice and the coupon included instructions for payment remittance, the middle area with the balance due did not. Likewise, only the top of the notice and the coupon included the warning that Abouelnaga would not receive another cancellation notice. These additional signposts in close proximity to the amount due (and absent from the middle section) undercut Abouelnaga's argument.

In sum, the notice reasonably conveyed that the "amount due" of $245.23—not the "balance due" of $1,384.75—was all that was required to prevent cancellation of the Policy. Because the notice was valid, the Policy lapsed on June 20, and the Policy was

not reinstated until Abouelnaga paid the "amount due" on June 28. Thus, the Policy was not in effect at the time of the June 26 accident, and State Farm has no duty to defend or indemnify Abouelnaga in connection with that accident.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 25] is GRANTED.

2. The Court DECLARES that plaintiff has no duty to defend or indemnify defendant Nada Abouelnaga for any claims—including, but not limited to, any claims made by defendant Konstantin Ginzburg—arising out of the June 26, 2024 accident that resulted in the death of Shleyma Ginzburg.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 11, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge